**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Rich Media Club LLC,

Plaintiff,

v.

Duration Media LLC,

Defendant.

No. CV-22-02086-PHX-JJT

**ORDER**

At issue is Defendant Duration Media LLC's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 27, MTD), to which Plaintiff Rich Media Club LLC filed a Response (Doc. 30, Resp.) and Defendant filed a Reply (Doc. 33, Reply). The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court denies Defendant's Motion to Dismiss.

**I. BACKGROUND**

In the Amended Complaint, the operative pleading, Plaintiff states that online advertising is one of the largest advertising markets in the world and faces many challenges that are not common in other media. (Doc. 20, Am. Compl. ¶¶ 7–8.) While advertisements placed in print media or on broadcast television are readily verifiable to advertisers, online advertising presents a different challenge because, for any given content, the size of the user's browser window determines the viewability of the content at any given time. (Am. Compl. ¶¶ 8–9.) Plaintiff develops and sells products and services to provide advertising

and marketing solutions to businesses. With regard to online advertising, Plaintiff developed patented technology that ensures that an advertisement appears on the portion of a web browser window being viewed by a potential consumer. (Am. Compl. ¶¶ 10–11.)

This matter arises out of Plaintiff's patent infringement claim against Defendant under 35 U.S.C. § 271. As of October 11, 2022, Plaintiff had "received ten issued United States patents for inventions related to ad viewability, monitoring, and confirmation." (Am. Compl. ¶ 13.) Among those patents is U.S. Patent No. 11,443,329 ("'329 Patent"), titled "System and Method for Creation, Distribution, and Tracking of Advertising Via Electronic Networks," which was issued to Plaintiff by the United States Patent and Trademark Office ("USPTO") on September 13, 2022. (Am. Compl. ¶¶ 14–15.) The '329 Patent relates to a system and method for "determining whether a predefined area of an ad content display page that is used to display an advertisement is in view within a visible area of a browser window," rendering an advertisement within that predefined area based upon a real-time auction, and rendering a replacement advertisement within the area after a predefined length of time. (*See* Doc. 30-1, Resp. Ex. A, '329 Patent columns 67–69.)

Claims 1, 2, 3, and 5 of the '329 Patent recite:

> What is claimed is:
>
> 1. A method comprising:
>
> (a) determining whether a predefined area of an ad content display page that is used to display an advertisement is in view within a visible area of a browser window of a browser configured to be operated by a remote computing device, wherein the predefined area is a portion of the ad content display page, and wherein the ad content display page includes (i) the predefined area configured to display advertisement content, the predefined area being a portion of the ad content display page, and (ii) page content displayed in other portions of the ad content display page, the page content being separate from the advertisement content; and
>
> (b) in response to a determination that the predefined area that is used to display the advertisement has been in view within the visible area of the browser window for a predefined period of time, causing a communication to be sent to one or more dispatcher servers, wherein the one or more dispatcher servers are configured to:

(i) receive the communication;

(ii) cause a replacement advertisement to be selected for display on the ad content display page; and

(iii) cause the replacement advertisement to be served to the remote computing device; wherein the browser is further configured to render the replacement advertisement in the predefined area.

2. The method of claim 1 wherein the replacement advertisement is selected at least partially as a result of a replacement auction.
3. The method of claim 2 wherein the replacement auction is conducted in real time between the time the second communication is sent from the remote computing device and the time that the replacement advertisement is selected.
4. [not at issue] . . .
5. The method of claim 1 wherein the predefined area of the ad content display page currently displays an advertisement, and wherein the replacement advertisement replaces the currently displayed advertisement.

('329 Patent columns 68–69.)

Plaintiff alleges that the individual elements in the claim—and the claimed combination—in the '329 Patent were not routine, well-understood, or conventional at the time of the invention. (Am. Compl. ¶ 22.) For its part, Defendant was issued U.S. Patent No. 11,195,210 ("'210 Patent") on December 7, 2021.[1] (Am. Compl. Ex. E, '210 Patent at 2 of 20.) The '210 Patent "relates generally to systems and methods for real-time viewable advertising, and more specifically, to systems and methods that programmatically sell the same ad space on the same computing device multiple times." ('210 Patent column 1.) The '210 Patent includes a diagram nearly identical to Figure 51 contained in the '329 Patent, which Plaintiff alleges was copied by Defendant from one of Plaintiff's patents. (Am. Compl. ¶ 55.)

[1] Plaintiff's '329 Patent is a continuation-in-part of related Patent Application No. 12/384,403, filed on April 4, 2009, now Patent No. 11,004,090, which is a continuation-in-part of Patent Application No. 11/803,779, filed on May 16, 2007, now U.S. Patent No. 10,380,602, which is a continuation-in-part of Patent Application No. 11/643,245, filed on Dec. 21, 2006, now U.S. Patent No. 10,380,597, which claimed the benefit of the earlier filing date of U.S. Patent Application No. 60/753,536, filed on December 24, 2005. (*See* '329 Patent column 1.)

On December 9, 2022, Plaintiff filed suit against Defendant for one count of patent infringement, claiming that Defendant "directly infringed [at least claims 1, 2, 3, and 5 of] the '329 Patent . . . by making, using, offering for sale, and/or selling Infringing Services[.]" (Am. Compl. ¶ 45.) Plaintiff requests that the Court declare that Defendant infringed the '329 Patent under 35 U.S.C. § 271 and enter an injunction preventing Defendant from continuing to infringe the '329 Patent. Additionally, Plaintiff seeks monetary relief, increased damages for willful and deliberate infringement under 35 U.S.C. § 284, and recovery of its attorneys' fees and costs incurred in prosecution under 35 U.S.C. § 285. (Am. Compl. ¶¶ 55, 56 & at 22–23.)

In its reasserted Motion to Dismiss, filed March 22, 2023, Defendant seeks dismissal of the Amended Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6). (MTD at 1.) Defendant contends that Plaintiff's '329 Patent is invalid because it is directed to patent-ineligible subject matter under 35 U.S.C. § 101: specifically, an "abstract idea." (MTD at 1.)

## II. LEGAL STANDARD

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility

standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. ANALYSIS

Patent eligibility is a question of law that may also contain underlying questions of fact. *Coop. Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 130 (Fed. Cir. 2022). As such, patent eligibility can be determined as a matter of law on a motion to dismiss only when there is no issue of material fact regarding the claim elements or claimed combination. *Id.* Put another way, determination of patent eligibility at the pleading stage is appropriate "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018).

Patents granted by the USPTO are presumed to be valid. *See* 35 U.S.C. § 282(a); *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 100 (2011). This presumption reflects the fact that experts in the technical field have "already examined whether the patent satisfies the 'prerequisites for issuance of a patent,' including § 101." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1319 (quoting *Microsoft*, 564 U.S. at 95–96). However, "[a] party asserting an invalidity defense may overcome this presumption with 'clear and convincing evidence' proving otherwise." *Datanet LLC v. Microsoft Corp.*, 2023 WL 3947829, at *2

(W.D. Wash. June 12, 2023) (quoting *Microsoft*, 564 U.S. at 97); *see also Cisco Systems, Inc. v. Uniloc USA, Inc.*, 386 F. Supp. 3d 1185, 1190 (N.D. Cal. 2019).

The Patent Act identifies patent-eligible subject matter where it states that "[w]homever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor . . . ." 35 U.S.C. § 101. The term "process" means "process, art or method, and *includes a new use of a known* process, machine, manufacture, composition of matter, or material." 35 U.S.C. § 100(b) (emphasis added). The United States Supreme Court has repeatedly affirmed that there are three categories of exceptions to this provision: "'laws of nature, natural phenomena, and abstract ideas' are not patentable subject matter under § 101 of the Patent Act . . . ." *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 70 (2012) (quoting *Diamond v. Diehr*, 450 U.S. 175, 185 (1981)). However, "all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* at 71. Therefore, in order to avoid a too-broad interpretation of the exclusionary principle that would "eviscerate" patent law, the Supreme Court has stated that an invention may well be patentable if the nature of the claimed process or claimed combination transforms the patent-ineligible concept into a patent-eligible application of that concept. *Id.*

In *Mayo*, the Supreme Court set forth a two-step framework for distinguishing patents that claim one of the judicial exceptions from those that claim "patent-eligible applications of those concepts." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (citing *Mayo*, 556 U.S. at 72). The Supreme Court further developed the utility of this framework in *Alice*, where it applied the two-part test to determine whether a patent was directed to an abstract idea. *Id.* at 217. The first step of the *Alice* test asks whether the patent is directed to an abstract idea. *Id.* If it is not, then the ineligibility inquiry ends. *See Enfish, LLC v. Microsoft Corp.*, 822 F.2d 1327, 1339 (Fed. Cir. 2016). However, if a claim is directed to an abstract idea, then step two of the *Alice* test asks whether the elements of the claim individually and as an ordered combination contain an "inventive concept"

sufficient to transform the claimed abstract idea into a patent-eligible application of that idea. *Alice*, 573 U.S. at 217–18 (citing *Mayo*, 566 U.S. at 71–72, 77–78) (internal quotations omitted).

**A. Abstractness**

Step one of the *Alice* test examines whether the asserted patent is directed to an abstract idea by focusing on the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Pats. Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). Defendant argues that the '329 Patent is directed to patent-ineligible subject matter because Claim 1 "is directed to the abstract idea of organizing human activity, namely, displaying an advertisement when a certain condition is met." (MTD at 5.) However, Defendant mischaracterizes the '329 Patent by describing it as strictly an advertisement placement function and therefore a process that could be performed mentally by a human. (MTD at 9.) The '329 Patent recites a process that is significantly more than performing a conventional economic activity based on meeting a predefined condition, because the claim language describes with sufficient specificity how the steps are performed beyond reciting the generic computer components necessary to implement the functions and is therefore not results-focused. Specifically, for example, Claim 1 recites steps that include "*determining* whether a predefined area of an ad content display page . . . is in view within a visible area of a browser window[,]" "*causing* a communication to be sent[;] . . . a replacement advertisement to be selected for display . . .; and . . . the replacement advertisement to be served to the remoted computing device[,]" and "*configur[ing]*" the browser to "*render* the replacement advertisement in the predefined area." ('329 Patent columns 68–69 (emphasis added).) While Defendant asserts that the '329 Patent's claims recite a process that is as simple as a sign holder waving a sign at passing cars, Plaintiff's claimed system as a whole is an advertisement placement function utilizing electronic networks, contains ad tracking and viewability software and real-time analysis, and necessarily depends on browser window sizing assessment technology.

Further, Plaintiff asserts that the claims at issue are "not directed to [the allegedly abstract idea of] displaying an advertisement when a predefined condition has been met, but rather a specific, improved method for rendering advertisements in web browsers." (Resp. at 10.) "In the context of computer innovations and software, the 'step-one inquiry often turns on whether the claims focus on 'specific asserted improvements in computer capabilities,' which are patentable . . . ." *Datanet*, 2023 WL 3947829, at *3 (quoting *Int'l Bus. Machs. Corp. v. Zillow Grp., Inc.*, 50 F.4th 1371, 1377 (Fed. Cir. 2022)). "Indeed, some improvements in computer-related technology when appropriately claimed are undoubtedly not abstract . . . ." *Enfish*, 822 F.2d at 1335. In the Amended Complaint, Plaintiff alleges that the claimed inventions in the '329 Patent "make specific improvements to the functionality and usefulness of electronic networks used for advertising[:]"

> The present invention does not embed advertising HTML files within a web page, providing considerable economies to advertisers in saved labor, time and cost in terms of both inserting advertisements into web page files, and later changing any of those advertisements.

(Am. Compl. ¶ 17.)

Plaintiff claims further improvements recited in the '329 Patent, such as, "the present invention functions totally transparently to a network user . . . [and] does not require a network user to download or install . . . a separate application specifically to receive advertising . . . ." *Id.* Moreover, Plaintiff cites the approval of a related patent (Am. Compl. Ex. A, *Ex Parte Brad Krassner*) in its appeal to the USPTO's initial § 101 rejection of Claim 1 of the '329 Patent, in which Plaintiff stated: "[Claim 1] of the present application recites an improvement to the technical field of determining when to render an advertisement in a predefined area on a page displaying in a browser window." (Am. Compl. ¶ 36, Ex. C at 6.) Plaintiff stated that the claimed process was an "improve[ment] upon prior art techniques for determining when to render an advertisement in a predefined area on a page displaying in a browser window . . . ." (Am. Compl. ¶ 37.) The '329 Patent's text includes several iterations of code sampled from the process during a preferred

embodiment, showing with sufficient specificity *how* the recited system and method achieve the improvements identified in the specification. (Am. Compl. ¶ 23; ’329 Patent columns 24–35, 42–49, 65–68.) Additionally, Figures 51, 53, and 54-A, B, and C of the ’329 Patent—which depict the method for creating a content page rendering area space and implementing a correlator code—show with sufficient specificity the process for achieving the promised result. For all of these reasons, the Court finds that the ’329 Patent is not directed to an abstract idea.

In light of the validity presumption for issued patents, *see* 35 U.S.C. § 282(a), the Court also finds persuasive the prosecution history of the ’329 Patent’s predecessors, as well as the fact that the “the claims of the ’329 [P]atent underwent a § 101 analysis during prosecution.” (Am. Compl. ¶ 35.) In the Notice of Allowance for the ’329 Patent from the USPTO, issued in response to the § 101 appeal, the Examiner expressly stated under the heading “Allowable Subject Matter”: “Claims 2-11 are allowed.”[2] Further, under Examiner’s Reasons for Allowance, the Examiner concluded: “The amendment in combination with other limitations form an ordered combination and integrated practical application. 101 withdrawn.” (Am. Compl. Ex. D at 2.)

The Court also disagrees with Defendant regarding the applicability of *DDR Holdings, LLC v. Hotels.com, LP.*, 773 F.3d 1245 (Fed. Cir. 2014) to the ’329 Patent. Defendant claims that the Patent Trial and Appeal Board’s (“PTAB”) application of *DDR Holdings* to the ’329 Patent’s predecessors as a basis for reversing the § 101 rejection of claims in those patents is not applicable in this case. (MTD at 13–14.) While the Court is not bound by the prosecution history of the ’329 Patent’s predecessors, these related patents recite sufficiently similar claims to Claim 1 of the ’329 Patent such that the Court finds persuasive the PTAB’s reasoning in *Ex Parte Brad Krassner*. In *DDR Holdings*, the Federal Circuit affirmed the lower court’s holding that the asserted claims of the infringed patents-at-issue were not so manifestly abstract as to render them invalid for failing to claim patentable subject matter, because the claims

[2] Claim 2 of Patent Application No. 17/317,627 is now Claim 1 (one of the claims at issue) of the issued ’329 Patent.

> [did] not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution [was] *necessarily* rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

*DDR Holdings*, 773 F.3d at 1257 (emphasis added).

Here, the reasoning from *DDR Holdings* applies to the ’329 Patent because the claims at issue are necessarily rooted in computer technology in order to overcome a problem unique to computer networks in the context of Internet advertising: “verifying whether an online ad entered a part of a web browser window that was viewable to each of many varied web browser/screen combinations . . . .” (Am. Compl. ¶ 10.) Accountability for and tracking of consumer viewability of an online advertisement, as promised by Plaintiff’s services, depend on a technology to determine the size of a browser window and the available space for an advertisement to be placed within the viewable space. As Plaintiff argues, this is a technological solution for a problem for which there is no direct pre-Internet analog. Defendant claims that the § 101 prosecution history of the ’329 Patent’s predecessors “actually supports [Defendant]’s assertion that the ’329 Patent is directed to an abstract idea[,]” because all of the ’329 Patent’s “limitations reference generic computer components arranged in conventional fashion . . . .” (MTD at 13–14.) But Plaintiff contends the claimed solution in the ’329 Patent “does not recite only conventional computer technology.” (Am. Compl. ¶ 23.) In support, Plaintiff points to the patent specification’s disclosure of over ten pages of sample computer code, including at columns 24–35, 42–49, and 65–68. (Am. Compl. ¶ 23.) Plaintiff asserts that the limitations of the claims of the ’329 Patent indicate that the recited system and methods “seek[] to resolve problems rooted in computer technology and arising in the context of advertising on webpages . . .” and thus recite significantly more than the abstract idea of advertisement placement as conventionally implemented on a generic computer. (*Ex Parte Brad Krassner* at 11–12.)

Here, as in *Enfish*, “we are not faced with a situation where general-purpose computer components are added post-hoc to a fundamental economic practice or

mathematical equation. Rather, the claims are directed to a specific implementation of a solution to a problem in the software arts." *Enfish*, 822 F.2d at 1339. The '329 Patent claims recite a method solving a problem unique to Internet advertising: assessing the size of a browser window to determine viewability and thus place an advertisement in the most advantageous place, responding to the "network-centric challenge" of consumers being able to use differently sized devices to access the Internet. (*Ex Parte Brad Krassner* at 11-12.) While "not all claims purporting to address Internet-centric challenges are eligible for patent[,]" and claims that merely recite the abstract idea of Internet advertising along with "routine additional steps" do not overcome the judicial exception, *DDR Holdings*, 773 F.3d at 1259, Plaintiff sufficiently alleges that the '329 Patent claims "specify how interactions with the Internet are manipulated to yield a desired result—a result different from . . . the routine and conventional sequence of events ordinarily triggered." (Am. Compl. ¶ 24.)

In sum, the '329 Patent is directed to a non-abstract concept: a technological solution to a technological problem. There is no direct pre-computer analog to the problem of lack of accountability for consumer viewability of Internet advertisements caused by the consumer's ability to access the Internet using variations of computer devices with differently sized browser windows. The code generation claim limitation narrows with sufficient specificity the allegedly abstract concept of advertising in a predefined area upon determination of a predefined condition and does so in response to a problem that is unique to the Internet. Therefore, the claimed process of the '329 Patent is deeply rooted in technology and thus directed to a patent-eligible concept.

**B. Inventiveness**

If, contrary to the findings of the Patent and Trademark Examiner and this Court, the '329 Patent were found to be directed to an abstract idea, the inquiry would move to step two of the *Alice* test, which provides for the validity of a patent even when it is found to be directed to an abstract idea. Specifically, step two of the *Alice* test asks whether the patent claims, when examined individually and as an ordered combination, contain an

inventive concept such that it transforms the patent-ineligible nature of the claim into a patent-eligible application. *Alice*, 573 U.S. at 217 (citing *Mayo*, 566 U.S. at 71–72, 77–78).

As noted above, the '329 Patent aims to solve a problem unique to online advertising that arises from consumers' ability to access the Internet from a variety of technological devices with differently sized browser windows; at the time of the invention, the problem with Internet advertising was that "certain advertisements were never displayed on the screen to the consumer." (Am. Compl. ¶ 21.) Through the method and process recited in the claims of the '329 Patent, Plaintiff promises a service that can "verify[] whether an online ad entered a part of a web browser window that was viewable . . ." to the consumer, and for how long the advertisement remained within that viewable area. (Am. Compl. ¶ 10.)

Plaintiff asserts that the '329 Patent discloses a sizing technology that can, among other things:

> (1) assist in loading ads just before a user is expected to scroll to the content;
> (2) confirm that an ad is actually placed with the content regardless of whether it becomes viewable (and for how long);
> (3) confirm that an ad actually became viewable (and for how long); and
> (4) allow for the "first print" of an ad to be replaced with a "second print" of a different ad based on various criteria, such as how long the first print ad had been placed, was viewable, or both.

(Am. Compl. ¶ 11.)

Although Defendant contends that the claims require only conventional computer equipment—"browser," "remote computing device," and "dispatch server"—the '329 Patent outlines with sufficient specificity a new and inventive process using these conventional technological devices to improve upon the functionality of Internet advertising at the time of the invention. (MTD at 10.) Plaintiff alleges that not only do the claims of the '329 Patent address Internet-centric problems, but also that "at the time of the invention, the individual elements in the claim, and the claimed combination, were not well-understood, routine, or conventional activity." (Am. Compl. ¶ 22.) The claimed process departs from a routine and conventional sequence of events after the condition

precedent has been met because it utilizes an inventive sizing technology to determine where to place the online advertisement based on the size of a particular consumer's browser window. Considered as a whole, the recited steps do more than "merely organize the abstract idea into a stepwise description of a process used to perform the abstract idea." (*Ex Parte Brad Krassner* at 8.)

The '329 Patent contains an inventive concept: implementing a sizing technology in a process for using generic computer equipment in a novel way. As the Examiner stated regarding the '329 Patent Application,[3] the claims of the '329 Patent "in combination with other limitations form an ordered combination and integrated practical application" and thus overcome any objections to the validity of the '329 Patent under 35 U.S.C. § 101. (Am. Compl. Ex. D at 2.) The claims of the '329 Patent provide with sufficient specificity the process and method for Internet advertisement placement based on utilization of an inventive technology for determining the size of a user's browser window.

## IV. CONCLUSION

Defendant fails to show that the '329 Patent is invalid for being directed to patent-ineligible subject matter under 35 U.S.C. § 101. The Court finds at this—the motion to dismiss—stage that the claims recited in the '329 Patent, in disclosing a solution to the technological problem of Internet advertisement placement and tracking, are deeply rooted in technology and thus directed to patent-eligible subject matter under *DDR Holdings*. The Court also finds applicable the same analysis as contained in the PTAB's decision regarding § 101 prosecution of Plaintiff's previously issued, closely related Patent No. 10,380,602, of which the '329 Patent is a continuation-in-part.

Additionally, the Court finds that the '329 Patent contains an inventive concept rooted in technology such that it is directed to significantly more than an abstract idea. Because Defendant has not shown that the '329 Patent is directed to patent-ineligible subject matter under 35 U.S.C. § 101 as a matter of law, Plaintiff survives Defendant's Rule 12(b)(6) challenge.

[3] Patent Application No. 17/317,627.

**IT IS THEREFORE ORDERED** denying Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 27).

Dated this 11th day of July, 2023.

Honorable John J. Tuchi
United States District Judge